UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEMAJIO JEROME ELLIS,<br><br>Plaintiff,<br><br>v.<br><br>RADEMAKER, et al.,<br><br>Defendants. | CAUSE NO. 3:26-CV-1580-CCB-SJF |

**OPINION AND ORDER**

Demajio Jerome Ellis, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 2.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Ellis is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Ellis is an inmate at Miami Correctional Facility (MCF). The complaint is difficult to follow in places, but it can be discerned that on or about June 25, 2026, Ellis was involved in a use-of-force incident with Sergeant Rademaker (first name unknown), in

which he was sprayed with chemical spray.[1] He claims he was not doing anything wrong and that Sergeant Rademaker sprayed him without warning. He claims to suffer from asthma and other medical problems, and asserts that the spray caused him difficulty breathing, burning skin, and other symptoms.

After this incident, he claims he was left in his cell without soap or running water to wash off the spray. He decided to cover himself with his own urine and feces. When staff discovered him in this state, he was taken to a shower and a new cell was prepared for him. While he was in the shower, he allegedly requested mental health treatment from Sergeant Rademaker and Officer Bratten (first name unknown). He states he was "peaceably explaining [his] symptoms" to Sergeant Rademaker, when the officer sprayed him again with chemical spray. He claims Sergeant Hughes (first name unknown) was standing in the vicinity and laughed at him after this incident.

He claims he was then taken out of the shower even though he had not properly decontaminated himself. He claims his skin was still burning. He asked for another shower but was ignored, and so he decided to spread urine and feces around his new cell. He also intentionally clogged his toilet and flooded the cell in hopes of getting someone's attention. He claims Sergeant Rademaker, Officer Bratten, Sergeant Hughes,

---

[1] The court notes that Ellis makes allegations against "Defendants" collectively at various points, which is insufficient to state a claim against any individual under federal pleading standards. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing."). The court has nevertheless endeavored to give his pleading liberal construction and to discern from his account which Defendants are alleged to have taken the specific acts underlying specific claims.

Sergeant Brock, Lieutenant Doggendort, Captain Morgan, and Officer R. McCarty were all aware he was in his cell covered with bodily fluids and chemical spray, but instead of helping him, they allegedly shut off his water and left him there for 24 hours.

At some point Sergeant Rademaker and Nurse Raylen Bafo came to his cell, and he asked them for a shower and medical care, but he claims they simply "walked off . . . laughing." He claims all that evening he continued to ask Officer McCarty, Nurse Bafo, Sergeant Hughes, Sergeant Brock, and Officer Bratten for help, but they allegedly "said nope and kept laughing." The following morning around 2:30 a.m., a non-party officer took Ellis to the showers to clean up.

He alleges that he continued to feel the effects of the chemical spray for several days and experienced breathing difficulties, vision problems, and headaches, among other symptoms. He claims he saw Nurse Bafo and Nurse J. Hymena in the day following this incident, but they allegedly refused to provide him with any medical treatment, and instead told him that if he "did not like it," he "should not have gone to prison." Based on these events, he sues ten defendants for monetary damages and other relief.

Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation and internal quotation marks omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an

application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* While *de minimis* uses of force are not actionable, "a prisoner need not suffer 'serious injury' in order to bring an Eighth Amendment claim." *Id.* at 890-91 (citation omitted).

Here, Ellis claims Sergeant Rademaker sprayed him with chemical spray twice for no legitimate reason, causing him breathing difficulties and other symptoms that lasted for days. Accepting his allegations as true, which the court must at this stage, he has alleged enough to proceed further against Sergeant Rademaker on an excessive force claim. He mentions that other officers were nearby during these incidents, but the court cannot plausibly infer from the minimal information he has provided that any of them "had a realistic opportunity to step forward and prevent" Sergeant Rademaker from using excessive force. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). By his own account, Sergeant Rademaker sprayed him without warning. The fact that these employees allegedly laughed at Ellis, though unprofessional, does not give rise to an Eighth Amendment claim. *See Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019); *Dobbey v. Ill. Dep't of Correction*, 574 F.3d 443, 445 (7th Cir. 2009); *see also Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) ("[e]xercising poor judgment . . . falls short" of violating the Eighth Amendment).

The court also understands him to be suing Sergeant Rademaker, Nurse Bafo, Officer McCarty, Nurse Hymena, Sergeant Hughes, Sergeant Brock, Captain Morgan, Lieutenant Doggendort, and Officer Bratten for the denial of medical care. To assert a violation of the Eighth Amendment, a prisoner must allege (1) he had an objectively

serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Giving Ellis the inferences to which he is entitled, he has plausibly alleged a claim for the denial of medical care. He claims that he was having difficulty breathing and other symptoms from the chemical spray, and it can be discerned he was in such a deteriorated mental state that he covered himself with his own bodily fluids. He claims he repeatedly asked for medical attention, but the above individuals allegedly brushed off his requests with laughter or dismissive comments. He has alleged enough to proceed further on this claim.

He also sues the Warden of MCF. There is no *respondeat superior* liability under 42 U.S.C. § 1983, and this high-ranking official cannot be held liable for damages solely because of his position. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). To be held liable, a supervisor must have

been personally involved in the constitutional violation. *Mitchell,* 895 F.3d at 498. This requirement is satisfied if the constitutional violation occurred at the supervisor's direction or with his or her approval or consent. *Id.* The court cannot plausibly infer from Ellis' allegations that the Warden had any personal involvement in these events, or that he directed or approved of the alleged misconduct committed by his subordinates. This claim will be dismissed.

The complaint also purports to seek permanent injunctive relief, and the Warden would be a proper defendant in connection with such a claim. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). However, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting). Here, Ellis describes a series of events occurring in June 2026, which was more than six months ago. Although he makes broad statements about needing injunctive relief, there is no indication from his allegations he has even interacted with any of the Defendants

in recent months, let alone that he is being subjected to an ongoing constitutional violation.[2] He will not be permitted to proceed on this claim.

Ellis separately filed a motion for emergency injunctive relief. (ECF 4.) "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to

---

[2] The court does not understand him to be claiming that he has an ongoing need for medical care stemming from the events underlying the complaint, and he already has another case pending in which he is seeking prospective injunctive relief related to his medical care and mental health treatment. *See Ellis v. IDOC, et al.*, No. 3:25-CV-1051-GSL-JEM (N.D. Ind. filed Dec. 16, 2025). He has moved for emergency injunctive relief in that case twice and his requests were denied, most recently on October 16, 2026, as the court concluded that he was receiving appropriate care for his conditions. (*See* ECF 24, 51.) Ellis is not permitted to pursue duplicative claims in two pending cases. *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *see also Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993).

dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, as explained above, any injunctive relief granted to an inmate must extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right. *Westefer*, 682 F.3d at 681.

Here, Ellis seeks extremely broad relief. Among other things, he seeks an order that prohibits any prison employee from using force against him under any circumstances without prior authorization from this court. He also seeks an order prohibiting the prison from ever placing him "in a strip cell" without "blankets" and other items. (ECF 4 at 1.) This court must afford "wide-ranging deference" to prison officials regarding the safety and security of their facility. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979). This includes determining whether reasonable force may be necessary to ensure compliance with an order Ellis is given, and what items Ellis should be

allowed to have in his cell based on the potential security risk to himself or others.[3] *See Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) ("Inmates cannot be permitted to decide which orders they will obey, and when they will obey them[.]"). As discussed above, Ellis has not shown a likelihood that he is being subjected to an ongoing constitutional violation. He also has not demonstrated that he will suffer irreparable injury if he is not granted the expansive relief that he seeks before his claims can be resolved. His motion will be denied.

For these reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against Sergeant Rademaker in his personal capacity for monetary damages for using excessive force against him by spraying him with chemical spray for no legitimate security reason on or about June 25, 2026, in violation of the Eighth Amendment;

(2) **GRANTS** the plaintiff leave to proceed against Sergeant Rademaker, Nurse Raylen Bafo, Officer R. McCarty, Nurse J. Hymena, Sergeant Hughes, Sergeant Brock, Captain Morgan, Lieutenant Doggendort, and Officer Bratten in their personal capacity for monetary damages for denying the plaintiff medical care on or about June 25, 2026, in violation of the Eighth Amendment;

(3) **DISMISSES** Chris Dixon as a defendant;

---

[3] The court notes that public records in another suit Ellis filed reflects that he was recently transferred to long-term segregation due to his disciplinary record, which included refusing orders and spitting at staff. *See Ellis v. Shantel, et al.*, No. 3:26-CV-731-APR (N.D. Ind. filed May 27, 2026), ECF 29. Officials may have a heightened interest in limiting items in his cell while he is in disciplinary segregation. *See Lekas v. Briley*, 405 F.3d 602, 610 (7th Cir. 2005) (observing that transfer to segregation triggered a "drastic reduction in the number and nature of personal items that prisoners are allowed to have in their possession").

(4) **DISMISSES** all other claims;

(5) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sergeant Rademaker, Sergeant Hughes, Sergeant Brock, Officer Bratten, Captain Morgan, Lieutenant Doggendort (first names unknown), and Officer R. McCarty at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(6) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Raylen Bafo and Nurse J. Hymena at Centurion Health and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(7) **ORDERS** the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(8) **ORDERS** Sergeant Rademaker, Sergeant Hughes, Sergeant Brock, Officer Bratten, Lieutenant Doggendort, Officer R. McCarty, Nurse Raylen Bafo, and Nurse J. Hymena to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(9) **DENIES** the plaintiff's motion for emergency injunctive relief (ECF 4).

SO ORDERED on November 3, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT